JOSEPH BUYNOFSKY, Respondent, *v.* LEHIGH VALLEY RAILROAD COMPANY, Appellant.

**Master and servant — negligence — Federal Employers' Liability Act — employee of railroad company not entitled to recover under the act unless actually engaged in work connected with interstate commerce at time of injury.**

1. To recover under the Federal Employers' Liability Act for injuries received while working for a railroad company, not only must the carrier be engaged in interstate commerce at the time of the injury,

but the person injured must at the time thereof be employed by the carrier in such commerce. The true test of employment in such commerce in the sense intended by the act is, was the employee at the time of the injury engaged in interstate commerce or in work so closely related to it as to be practically part of it.

2. Where plaintiff, who was employed by defendant, a railroad company engaged in both interstate and intrastate commerce, was injured while working in a saw mill maintained and operated by defendant for cutting up timber and logs in making crossties, and it does not appear that the ties being made, at the time plaintiff was injured, were being made for any particular track or place or for any particular work of repair, but were intended for use generally at some future time, the purpose for which the crossties were intended was not then so definite and certain as to be beyond the possibility of a change in the use to which they would be devoted or from their being withdrawn from such purpose altogether, and, hence, the work in which plaintiff was engaged had no immediate connection with interstate commerce, and he cannot recover under the Federal Employers' Liability Act.

*Buynofsky* v. *Lehigh Valley R. R. Co.*, 183 App. Div. 901, reversed.

(Argued January 30, 1920; decided March 9, 1920.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 7, 1918, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Clifton P. Williamson* and *Edward W. Walker* for appellant. The evidence failed to establish a cause of action within the provisions of the Federal Employers' Liability Act. (*Lehigh Valley R. R. Co.* v. *Barlow*, 244 U. S. 183; *New York Central R. R. Co.* v. *White*, 243 U. S. 188; *Raymond* v. *Chicago, Mil. & St. P. Ry. Co.*, 243 U. S. 43; *M. & St. L. R. R. Co.* v. *Winters*, 242 U. S. 353; *Chicago, Burlington & Q. R. R.* v. *Harrington*, 241 U. S. 177; *Shanks* v. *Del., Lack. & West. R. R.*, 214 N. Y. 413; 239 U. S. 556; *Giovio* v. *New York Central R. R. Co.*, 176 App. Div. 230; 223 N. Y. 653; *Central R. R. Co. of N. J.* v. *Paslick*, 239 Fed. Rep. 713; *H. & M. R. R. Co.*

v. *Torio*, 239 Fed. Rep. 855; *Verdicchio* v. *McNabb &
Harlin Mfg. Co.*, 178 App. Div. 48.)

*Sydney A. Syme* for respondent.  The allegations of the
complaint which are admitted by failure to deny them,
the affirmative allegations in the answer, and the plaintiff's
proof that at the time of receiving his injuries he was
cutting crossties, taken together, conclusively establish
that, at such time, plaintiff was engaged in interstate
commerce.  (*Pedersen* v. *D., L. & W. R. R. Co.*, 229 U. S.
146; *Plass* v. *C. N. E. Ry. Co.*, 221 N. Y. 472; *Dollmers* v.
*N. Y. C. R. R. Co.*, 167 N. Y. Supp. 426; *Roush* v. *B. & O.
R. R. Co.*, 243 Fed. Rep. 712; *Collins* v. *Erie R. R. Co.*,
245 Fed. Rep. 811; *Kelly* v. *Erie R. R. Co.*, 177 N. Y.
Supp. 278; *P., B. & W. R. Co.* v. *Smith*, 39 S. C. R. 396;
*Kinzell* v. *C., M. & St. P. Ry. Co.*, 39 S. C. R. 412.)

Chase, J.  The defendant is a railroad corporation
engaged in the maintenance, operation and control of a
steam railroad for the transportation of passengers and
freight which extends from Jersey City and other places
in the state of New Jersey to various towns and cities in
the states of Pennsylvania and New York.

The pleadings assert that in operating its trains between
the stations in the state of New Jersey and the stations in
the states of Pennsylvania and New York, the defendant
was engaged in interstate commerce.  Interstate com-
merce is defined to include " transportation from any
State or Territory or the District of Columbia to any other
State or Territory or the District of Columbia."  (United
States Compiled Statutes, sections 8647, 8812.)  When
transporting passengers or freight between stations in the
same state it was not engaged in interstate commerce as
so defined.

It also appears from the pleadings as well as from the
evidence that in connection with operating its railroad
the defendant did, from time to time, construct, repair

and keep in proper condition the tracks upon which its trains were operated including the crossties and rails form-ing the tracks upon which the trains were run and for the purpose of its business maintained a portable saw mill or shop located within its railroad yards at Perth Amboy in the state of New Jersey and there, among other things, sawed from larger timbers or logs and manufactured, made and repaired crossties to be used by it in repairing, maintaining and keeping in proper condition the tracks upon which the defendant operated its trains.

The plaintiff with others was employed by the defend-ant at its saw mill or shop and while so engaged slipped and fell against a saw blade used in said mill which resulted in the loss of his right arm. This action is brought to recover damages for his personal injuries. The jury before which the action was tried rendered a verdict for the plaintiff, having found that the defendant was negli-gent in maintaining the saw without having the same properly guarded. The judgment was affirmed at the Appellate Division by a divided court. (*Buynofsky* v. *Lehigh Valley Railroad Company,* 183 App. Div. 901.)

The action is brought under the Federal Employers Liability Act, section 1 of which provides as follows: " Every common carrier by railroad while engaged in commerce between any of the several states or territories \* \* \* shall be liable in damages to any person suffer-ing injury while he is employed by such carrier in such commerce \* \* \* for such injury \* \* \* result-ing in whole or in part from the negligence of any of the officers, agents or employees of such carrier or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (United States Compiled Statutes, section 8657.)

The defendant insisted upon the trial, and insists now, that the plaintiff at the time of the injury was not engaged in interstate commerce. That is the only question

involved in this case which requires consideration in this opinion.

To recover under the Employers' Liability Act not only must the carrier be engaged in interstate commerce at the time of the injury but the person injured must at the time of the injury be employed by the carrier in such commerce. (*Shanks* v. *Del., Lack. & West. R. R. Co.*, 214 N. Y. 413; *S. C.*, 239 U. S. 556; *Ill. Central R. R. Co.* v. *Behrens*, 233 U. S. 473.)

The true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it. (*Shanks* v. *Del., Lack. & West. R. R. Co.*, 239 U. S. 556.)

The purpose to devote in future an agency capable of use in interstate commerce to that service will not meet the condition of the statute though physical preparation of the agency for immediate use in such commerce may suffice to invoke the provisions of the statute. (*Louisville & Nash. R. R. Co.* v. *Carter*, 195 Ala. 382; *S. C.*, Annotated Cases 1917 E. 292; *No. Car. R. R. Co.* v. *Zachary*, 232 U. S. 248.)

Plaintiff in this case while employed in connection with the work at the saw mill and in sawing timbers into pieces to be used for crossties had no immediate connection with the work of interstate commerce. The crossties that were being sawed were not on that day in any way connected with the tracks of the defendant over which interstate commerce was carried on. It does not appear that they were being prepared for any particular track or place, or for any particular work of repair. Considered in the way most favorable to the plaintiff they were designed for use generally by the defendant at some future time in the maintenance of its tracks. Whether they would ever be used as crossties by the defendant and if so, when and where, was dependent upon a further determination or act by it. The connection with inter-

state commerce is not more close in the instant case than would be work in a similarly located shop by persons engaged, among other things, in making bolts, parts of bridges, or other material which were designed ultimately for use by a railroad company in connection with the tracks over which interstate trains were to be run. It is a matter of importance to interstate commerce that coal and iron be mined, bridge material, rails and crossties be manufactured, but employment in mining or manufacturing comes within the protective statutes of the states in which the employment is had and is not interstate commerce.

The purpose for which the crossties were intended was not then so definite and certain as to be beyond the possibility of a change in the use to which they would be devoted or from their being withdrawn from such purpose altogether.

In determining when a person is engaged in interstate commerce a line should be and has been drawn by the courts between persons immediately and remotely engaged in the work of interstate commerce so as to exclude persons as remotely connected therewith as was the plaintiff.

We said in the *Shanks* case: " Unless some reasonable and practical limit and boundary is prescribed in acts constituting employment in interstate commerce, every act that can be shown to have affected interstate commerce in a remote degree, is included within the terms of the statute." (P. 420.)

The question has been frequently considered in recent years by the courts and where the employment is not connected with a particular duty, work or repair of an interstate road, as in the *Pedersen* case (*Pedersen* v. *Del., Lack. & West. R. R. Co.*, 229 U. S. 146) and kindred cases, the employment although perhaps remotely connected with interstate commerce has been held not to be within the meaning and intention of the statute.

An employee of a railway company engaged in mining

coal in a colliery owned and operated by the railway company, which coal was intended by the railway company for use in its conduct of interstate commerce is not engaged in interstate commerce within the meaning of the Federal Employers' Liability Act. (*Del., Lack. & West. R. R. Co.* v. *Yurkonis*, 238 U. S. 439; approved and reasserted in *Shanks* v. *Del., Lack. & West. R. R. Co.,* *supra*.)

Where a switchman engaged with others in removing cars standing on storage tracks loaded with coal and unloading the coal into bins and chutes where it was to be supplied as needed to locomotives in use in interstate and intrastate commerce, it was held that he was not engaged in interstate commerce. (*Chicago, Burlington & Quincy R. R. Co.* v. *Harrington*, 241 U. S. 177.)

A member of a switching crew assisting in placing on an unloading trestle in the railway company's yards coal cars belonging to such company and loaded with supply coal for it which with its contents had passed over its line from a point outside the state and which remained in the yards upon sidings and upon switches for several days before removal to the trestle was not then engaged in interstate commerce. (*Lehigh Valley R. R. Co.* v. *Barlow*, 244 U. S. 183.)

A night watchman in the employ of the railroad company was injured while in the performance of his duty to guard tools and material intended to be used in construction of a new roadway, station and new tracks. It was held that he was not engaged in interstate commerce and that decedent's work bore no direct relation to interstate transportation but had to do solely with construction work. (*New York Central Railroad Co.* v. *White*, 243 U. S. 188.)

An employee of an interstate railroad company who was engaged in the work of cutting a tunnel was not then an employee in interstate commerce within the meaning of the statute since the tunnel being only partially bored

was not then used as an instrumentality of interstate commerce. (*Raymond* v. *Chicago, Mil. & St. P. Ry. Co.*, 243 U. S. 43.)

Cutting grass and removing poison ivy and weeds along the line of an interstate railroad is not employment in interstate commerce unless the work contributed to the safety and integrity of the railroad itself. (*Matter of Plass* v. *Central New Eng. Ry. Co.*, 221 N. Y. 472; *S. C.*, 226 N. Y. 449.)

In *Minneapolis & St. Louis R. R. Co.* v. *Winters* (242 U. S. 353, 356), it appeared that the plaintiff was making repairs upon an engine. The court say: "An engine as such is not permanently devoted to any kind of traffic and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment *at the time, not upon remote* probabilities or upon accidental later events."

In *Hudson & Manhattan R. R. Co.* v. *Iorio* (239 Fed. Repr. 855) Iorio was assisting in putting rails into a pit at one of the terminals of the road where they were to be stored until required for track repairing. While so engaged he received the injuries to recover damages for which the action was brought. It was claimed that the rails were " humanly speaking, certain to be as much used for the facilitation and performance of interstate carriage as were the bolts which were being taken to repair a bridge " in the *Pedersen* case. It was held that the use of the rails " was certainly not imminent and might never occur   *   *   * for that commerce was going on without any present assistance either from Iorio or the rails on which he was

working," and that he was not practically engaged in, or a part of, interstate commerce.

The judgments of the Appellate Division and of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., COLLIN, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.